**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bob Newton; and Velma Weaver, | No. CV-08-711-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Suncrest Healthcare Center, LLC, | |
| Defendant. | |

Suncrest Healthcare Center, LLC ("Suncrest") operates a nursing facility that provides long-term services to geriatric, disabled, and chronically ill persons. Bob Newton began working for Suncrest in 2001, and Velma Weaver became an employee two years later. On March 24, 2006, Newton was terminated and Weaver resigned. Newton and Weaver filed a complaint against Suncrest asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended. Dkt. #1.

Suncrest has filed a motion for summary judgment. Dkt. #47. The motion has been fully briefed. Dkt. ##53, 56. For reasons that follow, the Court will grant the motion in part and deny it in part.[1]

---

[1] Plaintiffs' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Lake at Las Vegas Inv. Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Discussion.

Plaintiffs assert three types of claims under Title VII and § 1981: disparate treatment because of race (African-American), racially hostile work environment, and retaliation. Suncrest argues that the claims fail as a matter of law. The Court will address each claim. The Court notes at the outset that legal principles applicable to the Title VII claims apply with equal force to the claims brought under § 1981. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 851 (9th Cir. 2004) (disparate treatment); *Mannatt v. Bank of Am., NA*, 339 F.3d 792, 798, 800-01 (9th Cir. 2003) (hostile work environment and retaliation).

### A. Disparate Treatment.

Title VII makes it unlawful for an employer to discriminate against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). "Similarly, § 1981 prohibits [race] discrimination in the 'benefits, privileges, terms and conditions' of employment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting 42 U.S.C. § 1981(b)).

To survive summary judgment on a disparate treatment claim where there is no direct evidence of discrimination, the plaintiff must first establish a prima facie case. Specifically,

the plaintiff must show that he or she (1) belongs to a protected class, (2) was qualified for the position, (3) was subjected to an adverse employment action, and (4) similarly situated employees were treated more favorably. If a prima facie case is shown, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. Should the employer carry this burden, the plaintiff must show that the stated reason was not the employer's true reason, but was a mere pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993).

Suncrest seeks summary judgment on the disparate treatment claims on the ground that Plaintiffs cannot establish a prima facie case of discrimination. Suncrest argues that Weaver has no evidence that she suffered an adverse employment action (Dkt. #47 at 5-6), and Newton has no evidence that he was adequately performing his job or was treated less favorably than similarly situated employees (*id.* at 6-7). Plaintiffs do not address these arguments in their response.

A principal purpose of the summary judgment rule "is to isolate and dispose of factually unsupported claims[.]" *Celotex*, 477 U.S. at 323-24. Because Plaintiffs have failed to demonstrate a triable issue on essential elements of their disparate treatment claims, "Rule 56(c) mandates the entry of summary judgment[.]" *Id.* at 322. The Court will grant Suncrest's motion with respect to the disparate treatment claims.

**B.     Hostile Work Environment.**

"'[A] workplace in which racial hostility is pervasive constitutes a form of discrimination." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citation omitted). The creation of a racially hostile work environment violates Title VII and § 1981's "guarantee of 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). To establish a hostile work environment claim under Title VII and § 1981, Plaintiffs must show (1) that they were subjected to verbal or physical conduct because of their race,

- 3 -

1  (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or
2  pervasive to alter the terms and conditions of their employment and create an abusive work
3  environment. *See Mannatt*, 339 F.3d at 798. In determining whether these requirements
4  have been satisfied, the Court must view the evidence in the light most favorable to the
5  nonmoving party, in this case the Plaintiffs. *Anderson*, 477 U.S. at 255.

6        The first element clearly is met. Plaintiffs have presented evidence that supervisor
7  Larry Ceron subjected them to "extreme racial insults, as well as more subtle taunts[.]"
8  *McGinest*, 360 F.3d at 1115. Newton has testified that Ceron would bump into him at work
9  and call him "coon" and "nigger." Dkt. #48-2 at 24, 32, 35, 39. Ceron also would make
10 comments about Plaintiffs bringing "watermelon or chicken or greens" to potluck lunches.
11 *Id.* at 55-56. Weaver has testified that Ceron verbally and physically abused her because she
12 is black (Dkt. #48-1 at 59), that he would call her a "dumb and stupid nigger" (*id.* at 157,
13 162, 180), that he would ask whether she was going to eat "[g]reens and cornbread or that
14 nigger food" (*id.* at 160), and that he would wear a wig and walk around saying "this is what
15 black people wear" (*id.* at 100-01).

16       The remaining two elements – that the conduct was unwelcome and sufficiently
17 severe or pervasive – require Plaintiffs to show that "the work environment was both
18 subjectively and objectively hostile." *McGinest*, 360 F.3d at 1113. Plaintiffs have presented
19 sufficient evidence of subjective hostility. Newton repeatedly complained about Ceron's
20 racist comments to Suncrest Administrators Kim Arndt and Sadie Poland. Dkt. #48-2 at 51.
21 He was instructed to simply ignore Ceron and "take a walk around the building." *Id.* He was
22 not satisfied with this response, but there was nothing he could do about it. *Id.* Weaver also
23 repeatedly complained to Arndt about Ceron's harassment. Dkt. #48-1 at 172-74, 181. She
24 has testified that Ceron caused her "a lot of stress" and she was "very afraid of him." *Id.* at
25 97, 165, 169. Plaintiffs have demonstrated a triable issue as to whether they welcomed
26 Ceron's harassment. *See McGinest*, 360 F.3d at 1113.

27       In evaluating the objective hostility of a work environment, the Court should consider
28 the "'frequency of discriminatory conduct; its severity; whether it is physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *McGinest*, 360 F.3d at 1113 (quoting *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 872 (9th Cir. 2001)). Considering these factors, and construing the evidence in favor of Plaintiffs, as the Court must at this summary judgment stage, the Court concludes that the incidents described by Plaintiffs are sufficiently severe and pervasive to survive summary judgment. The discriminatory conduct occurred frequently. Ceron directed racial slurs at Newton every week and would intentionally bump into him nearly every day. Dkt. #48-2 at 43-44, 46, 50. Ceron called Weaver a "stupid nigger" ten or fifteen times and otherwise harassed her the entire time she worked at Suncrest. Dkt. #48-1 at 180-82. The conduct was severe. "It is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination." *McGinest*, 360 F.3d at 1116. The conduct involved physical abuse. Ceron would bump into Newton (Dkt. #48-2 at 43), and on one occasion he pushed Weaver and jabbed her with his elbow (Dkt. #48-1 at 182). In summary, each of the relevant factors supports a finding that Plaintiffs' work environment was objectively hostile.

Suncrest asserts that Plaintiffs have provided no "specific facts" regarding the frequency of Ceron's conduct (Dkt. #47 at 9), but Suncrest itself recognizes that the conduct purportedly occurred "on an almost daily basis" (*id.*). Plaintiffs' inability to provide specific dates does not entitle Suncrest to summary judgment.

Suncrest contends that Plaintiffs' good job performance shows that the alleged harassment did not alter the terms and conditions of employment. Dkt. ##47 at 9, 56 at 3-4. The Court does not agree. "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *McGinest*, 360 F.3d at 1116. Newton has testified that Ceron not only uttered the word in his presence, but used it to try to goad him into a fight so Ceron could get his "black ass" fired. Dkt. #48-2 at 43, 51, 60. Weaver was more than offended by Ceron's use of racial epithets. She had to change her schedule and transfer to a different unit to get away from

Ceron (Dkt. #48-1 at 66-67, 73, 184), and she claims that she ultimately was forced to leave Suncrest because the work environment became intolerable (*id.* at 169-70). Weaver has presented evidence sufficient to show that the hostile conduct made "'it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position.'" *McGinest*, 360 F.3d at 1113 (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)).

There are triable issues as to whether Plaintiffs were subjected to a racially hostile work environment. The Court will deny Suncrest's motion with respect to these claims. This ruling disposes of Suncrest's argument that Weaver cannot establish a prima facie case of constructive discharge. *See* Dkt. ##47 at 10, 56 at 7.

**C.    Retaliation.**

Title VII prohibits retaliation against an employee because he or she has opposed an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "Section 1981 prohibits 'racial discrimination in taking retaliatory action.'" *Surrell*, 518 F.3d at 1107 (quoting *Mannatt*, 339 F.3d at 798)); *see CBOCS W., Inc. v. Humphries*, --- U.S. ---, 128 S. Ct. 1951, 1957-58 (2008) (§ 1981 encompasses retaliation claims). To establish a prima facie case of retaliation, a plaintiff must show (1) that he or she engaged in protected activity, (2) a materially adverse action, and (3) a causal connection between the two. *See Surrell*, 518 F.3d at 1108.

Suncrest argues that the retaliation claims fail because Plaintiffs cannot establish a nexus between their complaints of discrimination and the alleged adverse actions. Dkt. #47 at 10. Weaver has made clear that, contrary to the allegations of the complaint (Dkt. #1 ¶¶ 1, 15), she is not asserting a retaliation claim. Dkt. #53 at 8 n.2. The Court will grant Suncrest's motion with respect to issue.

Newton argues that a causal link exists as to his claim for retaliation because he was terminated only nine days after he complained about Ceron's harassment. Dkt. #53 at 11; *see* Dkt. #51 at 13, ¶¶ 102, 104. Newton's retaliation claim fails as a matter of law, Suncrest contends, because he purportedly complained about Ceron for several years and yet no

adverse action was taken against him. Dkt. #47 at 10.

The Court concludes that there is a triable issue as to causation. The Ninth Circuit has made clear that "causation may be established based on the timing of the relevant actions." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). "Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Id.* (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375-76 (9th Cir. 1987)). On March 15, 2006, Newton sent a memorandum to Suncrest Director Kay Murphree requesting a meeting to discuss "serious concerns" he had about Ceron's conduct. Dkt. #48-4 at 4. Newton was terminated nine days later. This temporal proximity constitutes sufficient circumstantial evidence of retaliation to overcome summary judgment. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2004) (causation could be inferred from a nine-day lapse between complaint of discrimination and termination).

Suncrest contends that Administrator Arndt made the decision to terminate Newton, and he has presented no evidence showing that Arndt was aware of the March 15, 2006 memorandum at the time of her decision. Dkt. #56 at 5. Summary judgment generally is not appropriate where a person's knowledge or state of mind is at issue because the resolution of such issues is a jury function. *See Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985). The Court finds that summary judgment is not appropriate in this case because Arndt's credibility is at issue. Newton has testified that he repeatedly complained to Arndt about Ceron's harassing conduct (Dkt. #48-2 at 39), while Arndt has testified that not once during his employment did Newton complain to her about Ceron (Dkt. #48-4 at 69, ¶ 6). "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255; *see Stegall*, 350 F.3d at 1069.

Even if, as a matter of undisputed fact, Arndt was not aware of Newton's complaints of harassment when she made the decision to terminate him, summary judgment would remain inappropriate. Arndt's decision to terminate Newton allegedly was instigated by an

accusation of patient abuse made by Ceron less than one week after Newton signed the March 15, 2006 memorandum. Dkt. ##51 at 13, ¶ 103; Dkt. #48-2 at 73. A retaliatory motive on the part of Ceron may be imputed to Arndt if Ceron "influenced, affected, or was involved in the adverse employment decision." *Poland v. Chertoff*, 494 F.3d 1174, 1182-83 (9th Cir. 2007). Because the investigation into Newton's alleged patient abuse included a written report of the incident prepared by Ceron (Dkt. #48-4 at 57-58), a triable issue exists as to whether the investigation was "sufficiently independent to break the causal chain between" Newton's protected activity and the decision to terminate him. *Poland*, 494 F.3d at 1183-84.

Suncrest argues, for the first time in its reply brief, that even if Newton has established a prima facie case of retaliation, this claim nonetheless fails because Newton has not shown that Suncrest's stated reason for terminating him was a mere pretext for retaliation. Dkt. #56 at 6-7. "It is well established that issues cannot be raised for the first time in a reply brief." *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007). The Court will not consider Suncrest's new pretext argument.

The Court will grant summary judgment on Weaver's retaliation claim and deny it with respect Newton's claim.

**IT IS ORDERED:**

1. Defendant Suncrest Healthcare Center, LLC's motion for summary judgment (Dkt. #47) is **granted in part** and **denied in part**. The motion is granted with respect to the disparate treatment claims and Plaintiff Velma Weaver's retaliation claim. The motion is denied with respect to the hostile work environment claims and Plaintiff Bob Newton's retaliation claim.

2. The Court will set a final pretrial conference by separate order.

DATED this 23rd day of November, 2009.

*David G. Campbell*
David G. Campbell
United States District Judge